Adams et al. *v.* Gefsky, Appellant.

Argued April 15, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige and Parker, JJ.

*M. Leon Tolochko,* and with him *George Y. Meyer,* for appellant.

No appearance and no printed brief for appellee.

Opinion by Cunningham, J., July 14, 1932:

On July 8, 1928, Mina Adams, a wage-earning minor, then about eighteen years of age and living at home

with her widowed mother, was a guest in an automobile owned and driven by Hyland Gefsky, the defendant; while traveling from Castle Shannon toward Pittsburgh, Allegheny County, an accident occurred in which she suffered serious facial and head injuries. In an action of trespass by the minor, suing through her mother, Barbara Adams, and by the mother in her own right, based upon the allegation that the minor's injuries and her mother's consequent expense and loss of her daughter's earnings were caused by the negligent operation of the car by Gefsky, the jury rendered a verdict in favor of the minor for $1,000, and for the mother to the amount of $500. Defendant moved for judgment in his favor n. o. v. and, upon denial of his motion, took these separate appeals from the judgments entered upon the verdicts, assigning for error the refusal of judgment in his favor upon the whole record. With the exception of a conflict in the medical testimony, relative to the extent of the minor's injuries and with which we are not concerned under these appeals, the case is remarkably free from contradictory evidence and the defendant and his wife, who was also in the car, are to be commended for their frankness.

The route of the journey was down 18th with a sharp turn into Josephine, a paved city street, and then for some distance along the latter; the place of the accident was at the intersection of 21st with Josephine, where, as one of the consequences of an unusually severe storm on July 4th, debris, consisting of sticks, bricks and stones, covered with water and mud, had collected and still extended from curb to curb. Mina Adams testified that while on her way to Pittsburgh, during the late afternoon, defendant and his wife came along in his car and, being slightly acquainted with her, invited her to ride with them. Her account of the accident reads: ''I got in and was on our way to the city, and he was driving pretty fast,

and as he came to Josephine Street, the road was kind of rough from a storm they had a day or two before, and I warned him against the condition of the street, and his wife also warned him but he paid no attention to me nor his wife, and when we got about 25 or 35 feet from the intersection of 21st and Josephine Streets, it was plain to be seen there was an obstruction in the street that reached from curb to curb and I said, 'Mr. Gefsky, please be careful. What is the hurry?' And his wife again warned him, and he had told me to shut up, and he got very angry and he kept up the same rate of speed—[35 miles per hour according to the witness and 25 as fixed by defendant]...... Q. Did Mr. Gefsky slacken his speed as he approached this obstruction? A. He did not. Q. What? A. He didn't. Q. Was he going at that speed at the time he struck it? A. He was going at the same rate of speed. Q. What happened when you struck this obstruction? A. The car hit the obstruction with such force that it knocked us all out of our seats. Mr. Gefsky lost complete control of the car and the car swerved to the left-hand and ran about 150 feet and into a telegraph pole. Q. What happened to you when it hit the telegraph pole? A. I don't know what happened until I—the next thing I knew I was in the hospital ......"

About the only dispute between the parties as to the actual circumstances of the accident related to the alleged warning. The defendant stated his only recollection of a protest from Mina Adams was that as they were coming down 18th Street, on which the cartway was rough, she said "something about driving, but what it was I don't recall. I never pay any attention to anyone when I am driving." His testimony continued: "Q. Did she say anything about your speed or the roughness of the street, or what? A. That I can't remember. Q. Did she say anything to you as you were going along Josephine Street? A.

If she did, I didn't hear her. Q. You didn't hear her say anything? A. No." Defendant's wife recalled the warning on 18th Street but when asked whether one had been given on Josephine replied: "Not that I heard of."

Defendant gave this description of the accident: "Q. As you came up to the place where the accident happened, did you notice anything on the street? A. As I was heading towards—as I was coming down Josephine Street, and as you look ahead as far as an average driver's eye can see, I noticed what seemed to me like a mud puddle, and I figured it that all I had to do was to drive right through it, and I just kept on at the same rate of speed, and as I approached the debris my car bounced into the air. Q. Do you mean as you hit it? A. As I hit the debris, and the next thing I knew I hit the pole about 150 feet away, on the left side of the debris." Later, he testified: "As you come down the hill, naturally you can see plenty, but all I saw was black. I didn't know what it was until I was 25 feet away, and then I made my decision to simply go through it. Q. You saw mud and water down there? A. Yes, sir. ...... As I came to the intersection there were two ridges made by someone, evidently someone's car had made it and I just went through those two ridges."

In the light of these quotations from the testimony a court could not say this was an unavoidable accident not due to any negligence upon the part of the defendant. The questions of defendant's negligence and any possible contributory negligence on the part of Mina Adams were for the jury and were submitted by the learned trial judge, DITHRICH, J., in a clear, adequate and impartial charge concerning which no complaint is made.

We approve these excerpts from the opinion supporting the denial of judgment n. o. v.: "Reading the testimony [in the light most favorable to the plain-

tiffs] the conclusion is inevitable that defendant saw or should, with the exercise of reasonable care, have seen the debris in time to have stopped his car or at least slackened its speed. He did neither. He attempts to justify his failure so to do by saying that the obstruction appeared to be nothing but a mud-puddle and he therefore elected to take a chance and run through it in two tracks apparently made by another automobile. Having taken the chance, he must abide by the consequences.

"This case is not ruled by the cases cited in defendant's brief where, without notice of the occasional presence of ice or mud or a defect in a road, a car skids or gets out of the control of the driver. Here, all the evidence, including the photographs, show that defendant had a clear, unobstructed view for several hundred feet of what constituted a real obstruction in the road. It was not merely mud and water or a mud-puddle but a heavy deposit of mud and sticks and stones. Had it been merely what he says it appeared to be, there would still be no excuse for him attempting to run through it at the speed at which he was traveling."

The judgments are severally affirmed.